[Cite as *Hwy. Equip. Co. v. Richard Boccia Constr., Inc.*, 2024-Ohio-4753.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

HIGHWAY EQUIPMENT COMPANY,

Plaintiff-Appellee,

- vs -

RICHARD BOCCIA
CONSTRUCTION, INC. a.k.a.
R. BOCCIA CONSTRUCTION, CO.,

Defendant-Appellant.

CASE NO. 2024-T-0019

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2022 CV 00881

## O P I N I O N

Decided: September 30, 2024
Judgment: Affirmed

*Ned C. Gold, Jr.*, 8616 Bayberry Drive, N.E., Warren, OH 44484 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, Stow, OH 44224 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Richard Boccia Construction, Inc. ("Boccia"), appeals the judgment of the Trumbull County Court of Common Pleas finding Appellant liable for failure to pay Appellee, Highway Equipment Company ("Highway"), for the repair of a certain piece of equipment. The trial court found Boccia owed Highway $18,070.38 for the unpaid account.

{¶2} Appellant raises two assignments of error, arguing that the trial court erred by: (1) finding that Highway's delays in repairing Boccia's equipment were due to

unavailability of parts; and (2) finding Highway was entitled to receive payment on its full invoice of $18,070.38 and that Boccia was not entitled to damages on its counterclaims.

{¶3} Having reviewed the record and the applicable caselaw, we find the trial court's judgment was supported by competent credible evidence. Although the parties presented conflicting testimony at times, we grant deference to the fact finder in weighing the evidence on review.

{¶4} Therefore, we affirm the judgment of the Trumbull County Court of Common Pleas.

## Substantive and Procedural History

{¶5} Highway originally filed a Complaint on Account in 2019 under Case No. 2019CV0037. However, on April 31, 2022, that case was dismissed without prejudice pursuant to Civ.R. 41(A)(1)(b).

{¶6} On June 24, 2022, Highway refiled its Complaint on Account, asserting one count that Boccia engaged Highway to repair a certain piece of heavy machinery and that Boccia had failed to pay the outstanding account of $18,070.38.

{¶7} On July 29, 2024, Boccia filed its Answer and Counterclaim. In its Counterclaim, Boccia asserted two counts: Breach of Contract for Highway causing additional damage to the machinery and failing to repair the machinery in a diligent and workmanlike manner; and Negligence, for Highway's failure to perform the repairs in a reasonable fashion. Highway filed its Reply to Boccia's Counterclaims on August 1, 2022, and denied wrongdoing.

{¶8} The matter proceeded to a bench trial on November 29, 2023.

{¶9} The following evidence was adduced at trial:

2

Case No. 2024-T-0019

{¶10} Ryan Melcher, a field service manager for Highway, testified that Highway sells and repairs heavy equipment. Highway has eight locations across multiple states. Melcher's role is to manage mechanics, generate invoices, and coordinate the sourcing of parts for repairs.

{¶11} In summer 2017, Richard Boccia, Boccia's owner, engaged Highway to replace the instrument cluster on his Kobelco SK300 model excavator. Melcher said that the SK300 model was made in Japan and is an older model excavator no longer in production.

{¶12} On July 5, 2017, Highway's workers replaced the instrument cluster and noticed the swing motor, which makes the machine rotate, was leaking and in need of service. Melcher quoted the cost of repair for the swing motor at $3,000.00-$4,000.00 and said it would require the machine to be out of service for about one week. Richard authorized Highway to remove the part from the machine and return it to Highway's shop for repair. The initial plan was to return the part to Highway's shop where it could be resealed. However, once at the shop, Highway's mechanics discovered that the part was "packed full of grease and it should be filled with oil. . . . Because of that, the internal components were not getting proper lubrication" and the part was damaged beyond repair.

{¶13} Highway then began to search for new parts to replace those damaged by the grease. This represented a departure from the initial quoted repair. Melcher said that finding replacement seals was not difficult, but that sourcing gear sections and bearings was difficult because the parts were no longer available from Kobelco. Melcher said he needed to source the parts from after-market vendors and other owners of similar Kobelco

3

machines. He said he eventually found a part they could salvage from a damaged machine in an equipment junkyard. The cost of that part alone was $3,750.00. However, that part was not "an exact match" and Highway had to "Frankenstein" components to salvage a usable fix for Boccia's machine.

{¶14} Melcher testified that the swing motor repair proceeded quickly once Highway had sourced the necessary parts. During the intervening weeks, Melcher frequently communicated updates to Richard. Melcher said after the repair was complete, there was some follow up work that Highway did to fix some faulty seals, but said that Highway did not charge for this work. Melcher said the swing motor repair was completed by August 8, 2017.

{¶15} Melcher said that about a month after the swing motor had been repaired, Richard called Highway to have the Kobelco's pilot pump replaced. Richard sourced the part himself and needed Highway to install it. Melcher said that when Highway mechanics went to install the pilot pump, they found a number of hydraulic lines had been mismarked "as if the work had been started prior and then stopped." He said the mechanics incurred additional work trying to correct the problem and then get the install done.

{¶16} Melcher said that he generated an invoice for Boccia based on the swing motor and pilot pump service Highway had performed. The swing motor repair invoice amount was $14,113.70. The pilot pump repair invoice amount was $4,115.45. Melcher said that Highway made some concessions on the labor cost because they had engaged in such excessive hours trying to source parts and repair the swing motor. Therefore, Melcher deducted 72 hours of labor that was not reflected on the invoice. This amounted to approximately a $10,000.00 deduction in the bill.

4

**{¶17}** Dale Sarvey, a mechanic who worked at Boccia in 2017, testified about the Kobelco excavator repair. He said that Highway completed initial repairs on the swing motor on August 8, but said the machine was still not working properly. Sarvey testified that Highway did not fully repair the machine until August 28. He also said he noticed damage that looked like hammer marks on the machine that he had not seen before.

**{¶18}** Sarvey denied that there was grease in the swing motor and said that he had pressure washed everything off of it. However, he said that if grease had been in the component, it "won't hurt it." As to the pilot pump, he said that Highway's mechanics had improperly installed hoses on the machine which caused complications during the installation of the pilot pump. However, he acknowledged that Boccia workers had also worked with the pilot pump.

**{¶19}** Richard testified that he owns Boccia and has worked with Highway for many years. Richard said the Kobelco machine had a problem with a seal and was leaking oil. He put some grease into the seal to stop the leak. He said that Highway gave a quote to repair the leak at $3,500.00 "tops," and that the repair would take no more than a week.

**{¶20}** Richard said that before Highway came, he had his workers pressure wash the machine and mark all the line fittings so the machine could be quickly serviced. In addition, before the Highway mechanic took the swing motor apart, the mechanic added colored wires to the fittings to help keep things organized for reassembly.

**{¶21}** On August 8, Highway completed the repair, but the machine was still not functioning properly. Richard explained that when Highway completed the repairs, he discovered hammer marks on the swing motor and noted that the markings and wires to keep track of the line fittings were gone. Highway conducted further repairs on site around

5

August 28, but the machine was still not functioning properly. At that time, Highway suggested replacing the pilot pump.

{¶22} Richard said that he bought the part himself and installed it, but that he was still having trouble, so he called Highway. Richard said the mechanic tested various aspects of the machine, but was not successful in diagnosing the problem. Richard told him to just leave to avoid running up a large bill. He said the machine still does not operate properly.

{¶23} Richard said that he had to rent a piece of equipment to substitute for the Kobelco machine while it was being serviced. The cost associated with the rental was $12,600.00. Richard felt Melcher was a "bean counter" who had failed to give proper attention to his repair in favor of bigger clients.

{¶24} On February 7, 2024, the trial court issued judgment for Highway in the amount of $18,070.38. The trial court found that Boccia had failed to prove breach of contract or negligence because Boccia "failed to state any valid legal proposition to support [its] counterclaim for the rental costs of replacement equipment when the repair was unexpectedly delayed due to the unavailability of parts." The court concluded that part of the delay was attributable to Boccia, because it had attempted to repair the equipment by using heavy grease instead of regular oil. The trial court found that Melchior's testimony was credible, while Richard's testimony lacked credibility.

{¶25} Appellant timely filed the instant appeal raising two assignments of error.

## Standard of Review

{¶26} "[O]n appeal from a bench trial we review the trial court's factual findings under the manifest weight standard of review, while the trial court's legal findings are

6

reviewed de novo." *Ultimate Salon & Spa, Inc. v. Legends Construction Group,* 2019-Ohio-2506, ¶ 30 (11th Dist.). "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis deleted.) *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990). "'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Id.,* quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶27} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "[A] court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct. . . . The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

7

**Assignments of Error and Analysis**

{¶28} Appellant's assignments of error state:

{¶29} "[1.] THE TRIAL COURT'S FINDING THAT ALL OF THE DELAYS IN APPELLEEE REPAIRING APPELLANT'S MACHINERY RESULTED FROM UNAVAILABILITY OF PARTS."

{¶30} "[2.] THE TRIAL COURT'S FINDINGS THAT APPELLEE WAS ENTITLED TO ITS FULL INVOICE AND APPELLANT IS NOT ENTITLED TO DAMAGES ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶31} Both of Boccia's assignments of error relate to whether the trial court's judgment was against the manifest weight of the evidence. Therefore, we address them in a consolidated fashion. Boccia has not argued the court erred as a matter of law.

{¶32} Boccia argues the record does not support the trial court's conclusion that the delay in repairing the swing motor was caused by a difficulty in sourcing replacement parts.

{¶33} Melcher estimated it would take no more than a week to conduct a repair of the swing motor. However, once Highway mechanics began to work on the part, they discovered that grease had been improperly used in the components, which damaged the part beyond repair. Because of this, Melcher's initial cost and time estimate was no longer viable. Melcher testified that sourcing a replacement part was difficult because the Kobelco excavator was an older model, that Kobelco did not have the necessary parts, and that he conducted a wide search to source the appropriate parts. Once Melcher sourced the part, it still required additional work to "Frankenstein" the replacement.

8

Case No. 2024-T-0019

**{¶34}** The trial court found that the delay was partially attributable to Boccia's actions. Although Richard speculated that Highway did not prioritize his repair, he provided no evidence to support this belief. Had the swing motor not been damaged by the grease, the evidence shows the repair would have been completed quickly. However, the unforeseen need to replace the part rather than repair it caused both significant delay and significant difficulty in completing the job.

**{¶35}** Next, Boccia argues that the record does not support the trial court's finding that Highway was entitled to its full invoice price and that Boccia was not entitled to recover anything for the costs it incurred while waiting on Highway to repair the excavator.

**{¶36}** However, the trial court concluded that there was "no support" for Boccia's position. The court said that although "the cost of the repair was in excess of the initial quote . . . the costs increased because [Highway] had to search for and buy the replacement part internationally." Further, Melcher testified that Highway discounted their price by approximately $10,000.00. In the same way that the delay was at least partially attributable to Boccia's actions, the need to rent a substitute piece of equipment while the Kobelco machine was being serviced was at least partially attributable to Boccia's actions. Boccia did not establish that Highway breached its contract or acted negligently.

**{¶37}** The trial court's judgment was supported by competent credible evidence. Although the parties presented different accounts of repair process, we are mindful of the deference we give to the trier of fact in weighing the evidence on review. The trial court specifically found Melcher to be credible and found Richard to not be credible.

**{¶38}** Accordingly, Appellant's assignments of error are without merit.

9

Case No. 2024-T-0019

{¶39} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

MARY JANE TRAPP, J.,

concur.